IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IDALIZ G. NIEVES-PABÓN, <br><br> Plaintiff, <br><br> v. <br><br> HÉCTOR PESQUERA, in his personal and in his official capacity as Superintendent; **JAMES TULLER CINTRÓN,** in his personal and in his official capacity as Designated Superintendent; and **THE COMMONWEALTH OF PUERTO RICO'S POLICE DEPARTMENT** <br><br> **Defendants** | CIVIL CASE NO. <br><br> VIOLATION OF THE ADA <br><br> TRIAL BY JURY DEMANDED |

## COMPLAINT

**COMES NOW** the plaintiff, **Idaliz G. Nieves-Pabón**, through the undersigned attorneys, and respectfully states, alleges and prays as follows:

### JURISDICTIONAL STATEMENT

1. This is a civil action brought for disability discrimination pursuant the American with Disabilities Act, 42 U.S.C. § 12101 et. seq. ("ADA"); 42 USCA Secs. 1983 and 1988 (violation of the Equal Protection Clause); the Puerto Rico Employment Discrimination Statute; 29 P.R. Laws Ann. §§146 ("Law 100"); and the Puerto Rico Civil Code Article 1802.

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C.A. §1331 since this action arises under laws of the United States. Subject matter jurisdiction over claims asserted under the laws of Puerto Rico is based upon supplemental jurisdiction pursuant to 28 U.S.C. §1367. The state claims are so related to the federal claims in this action that

1

they form part of the same case or controversy under Article III of the United States Constitution as provided under 28 U.S.C. §1367(a).

3. Venue lies properly in this Court pursuant to 28 U.S.C.A. § 1391(a)(2) because the acts herein complained of occurred within the Commonwealth of Puerto Rico.

## THE PARTIES

4. Idaliz G. Nieves-Pabón (hereinafter "Nieves-Pabón" and or "Plaintiff") is the Plaintiff in this case, and she is a resident of Morovis Puerto Rico and was perceived to have a disability after she suffered an injury while performing her duties at the Commonwealth of Puerto Rico's Police Department (hereinafter "PRPD") and because of this perceived disability was prevented from graduating from Police Academy and was terminated in violation of the American with Disabilities Act, the Equal Protection Clause and state law.

5. Defendant Héctor Pesquera was at all times pertinent herein, a resident of the Commonwealth of Puerto Rico; the Chief or Superintendent of the Puerto Rico Police Department and he was acting under color of law. As Superintendent and pursuant to law, Defendant Héctor Pesquera executed the laws and regulations of the Commonwealth of Puerto Rico pertaining to law enforcement; was responsible for administrating and directing the Police Department; and he was also responsible for the administrative, operational, recruitment, training, supervision and discipline of police officers at the time of the incident. Mr. Pesquera was also responsible for, and made and executed by himself and through the department's officers and employees, policy decisions regarding The Commonwealth of Puerto Rico's Police Department is a governmental agency of the training and law

enforcement techniques to be employed by the department. Mr. Pesquera is being sued in his individual and official capacities.

6. James Tuller Cintrón (Hereinafter "Tuller Cintrón") was on February 19, 2014, and at all times pertinent herein, a resident of the Commonwealth of Puerto Rico; the Chief or Superintendent of the Puerto Rico Police Department and he was acting under color of law. As Superintendent and pursuant to law, Defendant Tuller Cintrón executed the laws and regulations of the Commonwealth of Puerto Rico pertaining to law enforcement; was responsible for administrating and directing the Police Department; and he was also responsible for the administrative, operational, recruitment, training, supervision and discipline of police officers at the time of the incident. Mr. Díaz Colón was also responsible for, and made and executed by himself and through the department's officers and employees, policy decisions regarding The Commonwealth of Puerto Rico's Police Department is a governmental agency of the training and law enforcement techniques to be employed by the department. Mr. Tuller-Cintrón is being sued in his individual and official capacities.

7. The Commonwealth of Puerto Rico's Police Department (Hereinafter "PRPD") is a governmental agency and employer for Nieves-Pabón, which can be sued under the relevant statutes.

## STATEMENT OF FACTS

8. On November 1, 2007 Nieves-Pabón was appointed as a member of the PRPD with the position of Cadet Badge number 34662 and was sent to the College of Criminal Justice PR (hereinafter CCJ) for the corresponding training to become certified as law enforcement officer for the PRPD.

9. During this training, Nieves-Pabón suffered some injuries to both her knees during physical education which prevented her from completing the Physical Education

3

portion of her training as programed. She was required to continue with her physical training despite her asking for an adjustment and/or a reasonable accommodation or even a slight modification to the exams given her physical limitations from the injuries suffered while training.

10. Nieves-Pabón finished the course of Physical Education as set forth in the Curriculum for CCJ at the time for her class, namely 2007. The Physical Education portion had no grade value but solely required a specified number of completed hours.

11. Nieves-Pabón finished all the required courses as set out in the basic training curriculum for CCJ with an overall average of 3.61 (this being separate and apart from undergraduate grades); however she was not included as a candidate for graduation.

12. Nieves-Pabón was informed that she failed to complete the physical education portion by 59 seconds.

13. However, the Defendants failed to follow the protocols set out in the CCJ program for cadets injured in training, which indicates, that a test cannot be administered to a cadet who is currently injured, and a leave is required to be obtained from the medical office of the PRPD before the administering of any exam.

14. This benefit has been honored for other cadets with injuries but was not in the case of Nieves-Pabón given her perceived disability and/or her actual physical disability.

15. The existing benefit requires Defendants to identify staff with temporary physical disabilities or a permanent physical disability, and be referred to the Medical Office for CCJ to assess whether the health condition is job related.

16. At the time, the Medical Office at the CCJ did not have a certified Doctor of Medicine, hence it Nieves-Pabón was referred to the State Insurance Fund (hereinafter "SIF"), and the Office of Medical Services at the Headquarters of the PRPD.

17. Nieves-Pabón was evaluated and treated by the SIF and ultimately found to have been incapacitated by the injuries suffered but able to performed functions, yet Nieves-Pabón was never allowed to retake the physical examination to become a Police officer, either outright or with a reasonable accommodation.

18. Furthermore, according to PRPD General Order 97-15 Rules and Procedures for the Prevention of Accidents at Workplace, the cadet must be evaluated at the Medical Office Headquarters for the PRPD for evaluation and referred to the SIF.

19. The Medical Office is to determine whether the cadet: (a) is suitable or not to continue the training; (b) should be relieved or not of his/her duties in full and sent home and referred to "*Centro de Reemplazo de la Superintendencia Auxiliar*"; or (c) Assigned other functions in the C.U.J.C; and (d) wait for the next available training academy.

20. In the case of Neives-Pabón, the PRPD waited five (5) months to sent her to Office of Medical Services at the PRPD Headquarters for evaluation.

21. If it is determined by the Medical Office the medical condition causing the incapacity was caused during the training of the cadet, as is the case of Nieves-Pabón, the PRPD extends to that cadet all of the benefits permitted and established under the law.

22. Nieves-Pabón was not referred for the appropriate assessment immediately, but after her class graduated.  Meanwhile she underwent the daily physical training and physical fitness testing as any cadet, the result of this was that those injuries were

5

aggravated since no adjustment or modification was permitted despite her request for a reasonable accommodation.

23. Indeed, the PRPD failed to perform the required evaluation of rigor, which is supposed to take place before administering any physical exam.

24. Due to the worsening of injuries Nieves-Pabón had a decline of 59 seconds in what is considered as an optimal time. Having finished all core courses and the practical exam with grade point average of 3.91 Nieves-Pabón was penalized by not allowing her to graduate with her class on May 19, 2008.

25. Nieves-Pabón subsequently had to be operated on both her knees due to injuries sustained in training.

26. Since mid-2008 the PRPD assigned Nieves-Pabón new functions, relocating her to the Monitoring Division of the PRPD Headquarters.

27. In the course of this time she was periodically evaluated by the Office of Medical Services of the Police to see the progress and recovery of the operations previously mentioned above in order to retest her either with or without an accommodation.

28. All the while, Nieves-Pabón continued in the Monitoring Division and was subjected to physicals, audio metrics, vital signs, blood-doping test, eye exam, blood sugar tests, EKG evaluations, Nieves-Pabón provided medical certifications as well as laboratory tests and Nieves-Pabón was never informed that she was not fit for duty.

29. In addition, Nieves-Pabón provided the Defendants with a copy of her SIF file and their recommendation for a reasonable accommodation to the physical examination given her condition at the time.

30. All this time, Nieves-Pabón was waiting for a decision to be eventually certified as a Police Officer.

31. All this time, Nieves-Pabón is performing police officer standard duties of patrol with the same responsibilities of any other law enforcement graduate and running the same dangers. Nieves-Pabón would take target practice and training annually for regulation sidearm. Nieves-Pabón participated in work safety assessment, examining the roles of fellow officers and their utilization throughout PRPD Headquarters.

32. Given the continued delay, on February 28, 2011, Nieves-Pabón requested a copy of her medical records by letter, but it was not answered and PRPD did not provide her with a copy of the file.

33. Again, Nieves-Pabón requests copy of her medical record on September 15, 2011 and asks for the justification for the delay and information of those who have been given access to her medical records and for what purpose. She indicated that she wanted to copy to provide it to her legal representative Atty. Joseph M Casanova Edelmann.

34. On October 19, 2011, in a communication numbered SASG-OSM-2-336 dated October 14, 2011, Nieves-Pabón was informed by the PRPD that after searching for her original medical file, the same does not exist and that only documents located were five (5) documents from her last visit.

35. Nieves-Pabón medical file going back to 2007 was lost placing her medical information to public exposure. The PRPD must have security measures to protect the privacy and confidentiality of medical records. Nieves-Pabón as result of this loss filed an

administrative complaint on November 17, 2011 with the number 2011-01-18-336 with the Assistant Superintendent for Professional Responsibility of the Puerto Rico Police.

36. Clearly the PRPD with the loss of her medical file has violated various state and federal laws.

37. On or about February 2012, Nieves Pabón executed an affidavit to commence an investigation with the PRPD Investigator Sgt. Light T Llanos Arroyo # 8-17888 Assistant Superintendent of Professional Responsibility of the Puerto Rico Police.

38. After about a year, in the month of January 2013, Nieves-Pabón writes the Defendant Superintendent Héctor Pesquera on the situation with her medical records and her situation in the PRPD and for information or any viable solution including possible modifications or a reasonable accommodation in order to retake the examination.

39. On March 13, 2013, Nieves-Pabón is delivered a summons to appear the next day, March 14, 2012, at the Office of Medical Services with SAG statement OSM-2- 39 for evaluation, and for her to take all medical records regarding her condition. Given the short notice of the appointment, Nieves-Pabón requested her supervisor in the Monitoring Division of the PRPD Headquarters, where she was assigned, to give her copies of those medical documents that were filed in her filed to take to the medical office.

40. At the March 14, 2014 during a meeting with Dr. Velásquez Hood, the Dr. indicated they sent Nieves-Pabón to be evaluated urgently but he realized that he could not properly evaluate her because he did not have any medical documentation, except the documents in the administrative complaint submitted by Nieves-Pabón. Nieves-Pabón

8

delivered the documents she had requested as mentioned above and explained her health condition.

41. The doctor physically examined Nieves-Pabón and asked her to bring to the next appointment documents from the SIF regarding her disability and documents showing that she was an employee with regular position with the PRPD.

42. The PRPD never answered Nieves-Pabón letter but yet on April 29, 2013, she was assigned new functions at the Gurabo Police Academy.

43. Nieves-Pabón is again required to attend a medical evaluation on May 1, 2013. Appearing at the appointment, Nieves-Pabón delivered the documents requested above and again asked the Office of Medical Services for the reasonable accommodation petitioned in 2008, cycling, swimming or walking as alternatives to the physical examination, which was reviewed and approved by the previous PRPD Doctor Lourdes I. González Díaz.

44. This accommodation, using alternative exercises to test physical endurance, such as cycling, swimming and/or walking was utilized with other cadets to allow them to graduate with their respective classes, yet Nieves-Pabón was not afforded this accommodation nor was she allowed to enjoy this benefit because of her disability or perceived disability.

45. Clearly, the reasonable accommodation was not onerous to the PRPD.

46. On May 1, 2013 Nieves-Pabón was notified of an appointment on May 20, 2013. She was summoned to this day because the Medical Board would meet on May 17, 2013 to discuss and evaluate her case and render a decision.

47. On May 20, 2013, Nieves-Pabón attended her appointment at the Office of Medical Services and was received by Dr. José Collado. He told Nieves-Pabón that the medical board had not made any decisions yet, because the board meeting had been postponed to May 31, 2013. Nieves-Pabón was given another appointment June 4, 2013.

48. Nieves-Pabón went to the appointment on June 4, 2013 in the Office of Medical Services but was attend to by Dr. Velasquez Hood. He indicated again that the Board would not be meeting until June 7, 2013 and that subsequently Nieves-Pabón would be given another appointment.

49. On August 29, 2013, Nieves-Pabón is delivered a communication numbered OS-2-OAL-34-21-OMS indicating the intent by Defendants to terminate her employment from the position she held as cadet, asserting that Nieves-Pabón had not passed her physical training to graduate as a police officer.

50. Nieves-Pabón was not in agreement with the determination and filed a petition for review of the decision to terminate her from employment.

51. On November 25, 2013, Nieves-Pabón had an administrative hearing during which she presented her excellent academic results, excellent work performance, her physical disability and the request for a reasonable accommodation and/or an opportunity to take the examination.

52. On March 14, 2014, Nieves-Pabón was summoned to the Division of Appointments and Changes of the PRPD and was notified of the final decision to terminate her signed by James Tuller Cintron.

53. Nieves-Pabón subsequently filed an appeal with the Commission Apelativa del Servicio Publico de Puerto Rico.

54. In addition, Nieves-Pabón filed a complaint with the Equal Employment Opportunity Commission, a clam of discrimination under ADA.

55. Nieves-Pabón was issued a Right to Sue Letter on August 14, 2015.

56. Nieves-Pabón, has suffered serious emotional and mental anguish resulting from her wrongful termination and denial of a benefit given to other cadets given her disability and/o perceived disability.  Nieves-Pabón was the daughter of a PRPD police officers and dreamed of serving the Commonwealth as her father did.

57. Nieves-Pabón's father dying wish was that Nieves-Pabón would someday use his badge number as is the tradition with the PRPD.  This fact haunts Nieves-Pabón that she could not fulfill her father's last wish given the wrongful termination by the PRPD and their denial of benefit given to other cadets.

58. Defendants failed to provide plaintiff with a reasonable accommodation after Nieves-Pabón suffered the job injuries incapacitating her and resulting in partially disabled knees.

59. Defendants failed to provide plaintiff with a benefit or privilege that was given to other cadets because of her physical disability and/or perceived incapacity.

60. The Defendants assumed she was totally disabled and never allowed her to take the physical examination, either with or without an accommodation, before terminating her in violation to their regulations.

**FIRST CAUSE OF ACTION**
*(Disability Discrimination – Termination ADA)*

61. The allegations contained in paragraphs 1 through 60 of this Complaint are incorporated by this reference as if fully set forth herein by Plaintiff.

62. Defendants' reason for terminating the Plaintiff constitutes evidence of disability discrimination.

63. Defendants' termination of Plaintiff was based on her disability. Defendants' decision was made with malice and with reckless indifference of Plaintiff's federally protected rights, and thus, constitutes an unlawful employment conduct pursuant to the American with Disability Act.

64. As a direct and proximate cause of Defendant's aforementioned wrongful termination, Plaintiff has suffered and will continue to suffer, under this cause of action, great emotional and financial damages estimated at one million dollars ($1,000,000.00).

## SECOND CAUSE OF ACTION
### (Disability Discrimination – Reasonable Accommodation ADA)

65. The allegations contained in paragraphs 1 through 64 of this Complaint are incorporated by this reference as if fully set forth herein by Plaintiff.

66. Defendants knowingly and purposefully did not make medically reasonable accommodations to the Plaintiff to attend to her disability's medical needs.

67. Defendant's denial of Plaintiff's request for reasonable accommodation was based on Plaintiff disability as it was rooted in Plaintiff's physical impairments.

68. Otherwise the Defendants' denial of Plaintiff's reasonable accommodation was based on a belief that Plaintiff was disabled and could not complete the physical examination and so did not even bother to retest her, as she would be able to pass the examination.

69. Defendants' decision was made with malice and with reckless indifference of Plaintiff's federally protected rights, and thus, constitutes an unlawful employment conduct pursuant to the American with Disability Act.

70. As a direct and proximate cause of Defendant's aforementioned discriminatory conduct, Plaintiff has suffered and will continue to suffer, under this cause of action, great emotional and financial damages estimated at one million dollars ($1,000,000.00).

### THIRD CAUSE OF ACTION
*(Disability Discrimination – Denial of a benefit/privilege of employment - ADA)*

71. The allegations contained in paragraphs 1 through 70 of this Complaint are incorporated by this reference as if fully set forth herein by Plaintiff.

72. Defendants knowingly and purposefully did not make any effort to reasonably accommodate Plaintiff (a benefit/privilege of employment) that is provided to other cadets and police officers within the PRPD.

73. Defendant's denial of Plaintiff's accommodation and further examination was based on Plaintiff's disability.

74. Defendants' decision was made with malice and with reckless indifference of Plaintiff's federally protected rights, and thus, constitutes an unlawful employment conduct pursuant to the American with Disability Act.

75. As a direct and proximate cause of Defendant's aforementioned discriminatory conduct, Plaintiff has suffered and will continue to suffer, under this cause of action, great emotional and financial damages estimated at one million dollars ($1,000,000.00).

### FOURTH CAUSE OF ACTION
*(Discrimination – Puerto Rico Law 100)*

76. The allegations contained in paragraphs 1 through 75 of this Complaint are incorporated by this reference as if fully set forth herein by Plaintiff.

77. Defendants' reason for terminating the Plaintiff constitutes evidence of disability discrimination.

78. Defendants' termination of Plaintiff was based on her disability. Defendants' decision was made with malice and with reckless indifference of Plaintiff's state protected rights, and thus, constitutes an unlawful employment conduct pursuant to Puerto Rico Law 100.

79. As a direct and proximate cause of Defendants' aforementioned discriminatory conduct, Plaintiff has suffered and will continue to suffer, under this cause of action, great emotional and financial damages estimated at one million dollars ($1,000,000.00).

**FIFTH CAUSE OF ACTION**
*(Disability Discrimination – Puerto Rico Law 100)*

80. The allegations contained in paragraphs 1 through 79 of this Complaint are incorporated by this reference as if fully set forth herein by Plaintiff.

81. Defendants knowingly and purposefully did not make medically reasonable accommodations to the Plaintiff to attend to her disability medical needs. 85. Defendant's denial of Plaintiff's request for reasonable accommodation was based on Plaintiff disability as it was rooted in Plaintiff's mental impairments. 86. Defendants' decision was made with malice and with reckless indifference of Plaintiff's state protected rights, and thus, constitutes an unlawful employment conduct pursuant to the Puerto Rico Law 100.

82. As a direct and proximate cause of Defendant's aforementioned age discrimination conduct, Plaintiff has suffered and will continue to suffer, under this cause

of action, great emotional and financial damages estimated at one million dollars ($1,000,000.00).

## SIXTH CAUSE OF ACTION
*(Disability Discrimination – Denial of a benefit/privilege of employment – Puerto Rico Law 100 ADA)*

83. The allegations contained in paragraphs 1 through 82 of this Complaint are incorporated by this reference as if fully set forth herein by Plaintiff.

84. Defendants knowingly and purposefully did not make any effort to afford a second examination with or without a reasonable accommodation (a benefit/privilege of employment) that it had provided to other employees of the PRPD but not to the Plaintiff.

85. Defendants' denial of this benefit was based on Plaintiff's disability.

86. Defendants' decision was made with malice and with reckless indifference of Plaintiff's state protected rights, and thus, constitutes an unlawful employment conduct pursuant to the Puerto Rico Law 100.

87. As a direct and proximate cause of Defendant's aforementioned discriminatory conduct, Plaintiff has suffered and will continue to suffer, under this cause of action, great emotional and financial damages estimated at one million dollars ($1,000,000.00).

## SEVENTH CAUSE OF ACTION
*(42 USCA Secs. 1983 and 1988)*

88. Besides being unfairly treated, plaintiff was treated differently from others similarly situated. While plaintiff was unfairly terminated, others similarly situated were allowed to proceed until graduation and were afforded reasonable accommodation to complete the required requisites. The disparate treatment afforded to plaintiff violates her

rights under the Equal Protection Clause, actionable under 42 USCA. sec. 1983. As a direct and proximate cause of Defendant's aforementioned conduct, Plaintiff has suffered and will continue to suffer, under this cause of action, great emotional and financial damages estimated at one million dollars ($1,000,000.00). Plaintiff is also entitled to punitive damages, which can be reasonably estimated in $500,000, and to an award of damages under 42 USCA Sec. 1988, which is also hereby requested.

## EIGHT CAUSE OF ACTION
*(Puerto Rico Civil Code Article 1802)*

89. Plaintiff is also entitled to a damages award under Article 1802 of the Puerto Rico Civil Code, as defendants intentional illicit conduct caused her damages. As a direct and proximate cause of Defendant's intentional (or, in the alternative, negligent) tortious conduct, Plaintiff has suffered and will continue to suffer great emotional and financial damages estimated at one million dollars ($1,000,000.00).

## JURY DEMAND

90. Trial by Jury is requested for all causes of action.

## PRAYER FOR RELIEF

As a consequence of the causes of actions raised hereby, the defendants are liable to the plaintiff for the damages inflicted upon her. Plaintiff sues for relief as set forth below:

1. Declaratory judgment;

2. Award compensatory damages for Plaintiff in the sum of no less than $1,000,000.00.

3. Award of Punitive damages.

4.  Injunctive relief in the way of an Order requiring compliance by Defendants of the American with Disabilities Act;

5.  Attorneys' fees and costs;

6.  All other relief to which they may be entitled or may be deemed just and proper.

**RESPECTFULLY SUBMITTED.**

In Guaynabo, Puerto Rico, this November 16, 2015.

**Counsel for Plaintiff:**

**LANDRÓN VERA, LLC**
Centro Internacional de Mercadeo
100 Carr 165, Torre I, Ste 203
Guaynabo, P.R. 00968-8048
Tel. (787) 774-5959
FAX (787) 774-8181

s/ Eileen Landrón Guardiola
**EILEEN LANDRON GUARDIOLA**
SDC-PR-203006
Email: elandron@landronvera.com

s/ Eduardo Vera Ramírez
**EDUARDO VERA RAMIREZ**
USDC-PR-209713
Erial: evera@landronvera.com

s/Luis A. Rodríguez Muñoz
**LUIS A. RODRIGUEZ MUNOZ**
USDC-PR 214511
Email: lrodriguez@landronvera.com